

FILED
CLERK, U.S. DISTRICT COURT
2/26/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: ___CW___ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| SUNSTONE HOTEL INVESTORS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY, <br><br> Defendant. | Case No.: SACV 20-02185-CJC (KESx) <br><br> **ORDER DENYING DEFENDANT'S MOTION TO DISMISS [Dkt. 13]** |

## I. INTRODUCTION

In this case, Plaintiff Sunstone Hotel Investors, Inc. alleges that Defendant Endurance American Specialty Insurance Company wrongfully withheld insurance coverage related to a coronavirus "superspreader" event that took place at a February 2020 conference on one of Plaintiff's properties, the Marriott Boston Long Wharf, which resulted in more than 20,000 coronavirus cases around the world. (Dkt. 1 [Complaint,

hereinafter "Compl."].)  Before the Court is Defendant's motion to dismiss.  (Dkt. 13 [hereinafter "Mot."].)  For the following reasons, the motion is **DENIED**.[1]

## II. BACKGROUND

Plaintiff—a lodging real estate investment trust with 20 hotel properties including the Marriott Boston Long Wharf—purchased a "Site Environmental Impairment Liability Coverage" policy (Dkt. 1-1, the "Policy"[2]) from Defendant for the period of June 22, 2017, to June 22, 2020.  (FAC ¶¶ 1–2, 23.)  Among other things, the Policy covers "Business Interruption" ("BI") losses "that directly result from . . . Biological Agent Condition(s) . . . on . . . a Scheduled Location" that "result in Cleanup Costs covered under this Policy."  (*Id.* ¶¶ 26–28.)  "Biological Agent Condition(s)" include the presence of viruses and other pathogens.  (*Id.* ¶¶ 32–33.)  BI coverage is subject to a $25 million liability limit and a 3-day waiting period.  (*Id.* ¶ 25.)

From February 24 to February 27, 2020, the Marriott Boston Long Wharf (one of Plaintiff's properties and a Scheduled Location) hosted an international meeting of leaders from biotechnology company Biogen, Inc.  (*Id.* ¶ 44.)  After the Centers for Disease Control and Prevention notified Plaintiff on March 4, 2020 that three attendees tested positive for coronavirus, the hotel closed as of March 12, 2020, and remained closed for months.  (*Id.* ¶¶ 44, 47.)

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for March 8, 2020, at 1:30 p.m. is hereby vacated and off calendar.

[2] Plaintiff attaches a copy of the Policy, which forms the basis of its claim, to its Complaint.  Accordingly, under the doctrine of incorporation, the Court may consider the language contained in the Policy in resolving this motion.  *See United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).

On March 6, 2020, Plaintiff asked Defendant to cover losses it sustained due to the closure. (*Id.* ¶ 43.) In a letter dated May 11, 2020, Defendant refused. It stated that Plaintiff's BI claim was subject to a $100,000 self-insured retention ("SIR"). (*Id.* ¶ 46.) Plaintiff wrote Defendant a letter on June 17, 2020, explaining why it believed Defendant was wrong. (*Id.* ¶ 48.) In response, on July 17, 2020, Defendant asked Plaintiff to complete a new questionnaire seeking what Plaintiff alleges was redundant and irrelevant information. (*Id.* ¶¶ 4, 48–49.) Plaintiff believes that Defendant did not investigate Plaintiff's individual claim, but rather provided a more general, omnibus rejection. (*See id.* ¶¶ 5, 45, 48–51.) In October 2020, Defendant again denied Plaintiff's claim, reiterating its position regarding the SIR. (*Id.* ¶¶ 4, 50.) In November 2020, Plaintiff filed this case, asserting claims for (1) breach of contract, (2) anticipatory breach of contract, (3) breach of the implied covenant of good faith and fair dealing, and (4) declaratory relief. (*Id.* ¶¶ 55–76.)

## III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994). Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The interpretation of an insurance contract is a question of law for the courts. *See Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995). "When interpreting a policy provision, [courts] must give terms their ordinary and popular usage, unless used by the parties in a technical sense or a special meaning is given to them by usage." *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999) (citation and quotation marks omitted). Additionally, "[t]he terms in an insurance policy must be read in context and in reference to the policy as a whole, with each clause helping to interpret the other." *Sony Comput. Ent. Am. Inc. v. Am. Home Assurance Co.*, 532 F.3d 1007, 1012 (9th Cir. 2008).

## IV.  DISCUSSION

Plaintiff seeks BI losses under the Policy's Coverage D.1.,[3] which states:

> **D. COVERAGE D – BUSINESS INTERRUPTION AND EXTRA EXPENSE**
> The Company shall pay, up to the Limits of Liability as specified in the Declarations and after the **Waiting Period**, the **Insured**'s **Business Interruption Losses** and **Extra Expenses** during the **Interruption Period** that directly result from **Pollution Condition(s)** or **Biological Agent Condition(s)**:
> 1. On or under a **Scheduled Location**, provided that:
>    a. Such **Pollution Condition(s)** or **Biological Agent Condition(s)** result in **Cleanup Costs** covered under this **Policy**; and
>    b. The **Pollution Condition(s)** or **Biological Agent Condition(s)** were first **Discovered** and reported to the Company during the **Policy Period** or the Automatic Extended Reporting Period or the Optional Extended Reporting Period, if any; or

In relevant part, Coverage D states that Defendant shall pay BI losses that directly result from Biological Agent Condition(s) that "result in Cleanup Costs covered under this

---

[3] Plaintiff confirmed in its opposition that it does not allege entitlement to relief under "Coverage C – Biological Agent Condition(s)," or under Coverage D.2., regarding Biological Agent Condition(s) that occur within 5 miles of a Scheduled Location. (Dkt. 19 [Opposition, hereinafter "Opp."] at 1, 3–4, 7–8.) The Court therefore does not address Defendant's arguments regarding why Plaintiff is not entitled to coverage under those sections of the Policy.

Policy." (Policy at 2, § D.1.) The parties dispute the meaning of the modifier "covered under this Policy." Defendant argues that "Cleanup Costs covered under this Policy" include only those Cleanup Costs that exceed the $100,000 SIR. (Mot. at 9–12.) To support its argument that Cleanup Costs must exceed the SIR to be covered, Defendant relies on the coverage grant in Coverage C, under which Plaintiff does not seek coverage:

> **C. COVERAGE C – BIOLOGICAL AGENT CONDITION(S)**
>
> The Company shall pay, up to the Limits of Liability and in excess of the Self-Insured Retention as specified in the Declarations, on behalf of the **Insured** for:
>
> 1. **Cleanup Costs** of the **Insured**;
> 2. **Liabilities** for **Property Damage** to property of a **Third Party** and **Cleanup Costs** of such **Third Party**;
> 3. **Liabilities** for **Bodily injury** to a **Third Party**; and
> 4. **Defense Expenses**;
>
> resulting from **Biological Agent Condition(s)**: (a) at, upon or within a **Scheduled Location** which commenced on or after the applicable **Retroactive Date**, if any, and before the **Policy** terminates, and (b) first **Discovered** and reported to the Company during the **Policy Period**, the Automatic Extended Reporting Period or the Optional Extended Reporting Period, if any.

(*Id.*) Defendant highlights that Coverage C states that the Company will only pay Cleanup Costs in excess of the SIR. Since Plaintiff has not incurred Cleanup Costs in excess of that amount (Opp. at 4), Defendant argues that Plaintiff's claim for BI losses must be dismissed.

Plaintiff, on the other hand, argues that the phrase "covered under this Policy" means only "fitting within the Policy's definition of Cleanup Costs." (Opp. at 4–7.) The Policy defines Cleanup Costs as "the reasonable and necessary costs incurred in performing Corrective Actions and/or Restorative Actions at, upon, within, under or migrating from a Scheduled Location," without regard to the SIR. (Policy at 18 ¶ 10.) Plaintiff argues that Coverage C's SIR is not a factor in determining what Cleanup Costs are "covered under this Policy" under Coverage D, and that Plaintiff need not have incurred $100,000 in Cleanup Costs to obtain Coverage D coverage. (Opp. at 4–7.)

Though "insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." *Bank of the W. v. Superior Court*,

2 Cal. 4th 1254, 1264 (1992). Accordingly, "[c]lear, explicit, and unambiguous contractual language governs." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citing *Boghos v. Certain Underwriters at Lloyd's of London*, 36 Cal. 4th 495, 501 (2005) and Cal. Civ. Code § 1638). Defendant's argument rests on incorporating Coverage C's $100,000 SIR into Coverage D. But the Policy does not make it clear, explicit, and unambiguous that Coverage C's SIR applies to Coverage D. Nowhere in Section D does it say that an insured must incur $100,000 in Cleanup Costs to trigger Coverage D coverage. Instead, to find the limitation Defendant seeks to impose, one must look in a whole other coverage section—one under which Plaintiff does not seek coverage.

What is more, there are express indications that Coverage C's SIR does *not* apply to Coverage D, and that only a 3-day waiting period applies instead:

| Item 7. | Coverage Schedule: | Purchased | Limit of Liability* | Self Insured Retention / Waiting Period** | Retroactive Date |
|---|---|---|---|---|---|
| | Coverage Section Insuring Agreements | | | | |
| A. | Coverage A - Pollution Condition(s): | Yes | $25,000,000 | $100,000 | N/A |
| B. | Coverage B - Nonowned Disposal Sites: | Yes | $25,000,000 | $100,000 | N/A |
| C. | Coverage C - Biological Agent Condition(s): | Yes | $25,000,000 | $100,000 | N/A |
| D. | Coverage D - Business Interruption and Extra Expense: | Yes | $25,000,000 | 3 days | N/A |

(Policy, Declarations Item 7.)

The meaning and function of the "covered under this Policy" language, and precisely what circumstances trigger coverage under Coverage D, is therefore at best ambiguous. In the event of an ambiguity, the court "must interpret contractual terms to protect the objectively reasonable expectations of the insured." *Id.*; *see Rallod Transp.*

*Co. v. Cont'l Ins. Co.*, 727 F.2d 851, 853 (9th Cir. 1984) ("When interpreting an insurance policy, the intent of the parties and the reasonable expectations of the insured are considered."). Coverage D contains strong language indicating that BI losses that directly result from viruses on Scheduled Locations will be covered. It seems to the Court that it would be a very rare situation where losses caused by a virus like the coronavirus resulted in Cleanup Costs over $100,000. If Defendant wished to make coverage for BI losses contingent on significant Cleanup Costs, it should have done so clearly and unambiguously. It did not. Put another way, the Policy gave Plaintiff reasonable expectations that BI losses would be covered even if, as in the usual case, they did not result in significant Cleanup Costs.

## V. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **DENIED**. Defendant is ORDERED to file an Answer by **March 12, 2021.**

DATED: February 26, 2021

HON. CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE